UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT SUTERA,

                              Plaintiff,

                                                          Case # 11-CV-6057-FPG

v.
                                                          DECISION AND ORDER

ROCHESTER CITY SCHOOL DISTRICT,
JOSEPH GRIFFIN, MARGARET CIVILETTI,
JOEL JIMENEZ, ROBERT CRANE, NICK RUSSO,
JOHN GOODWIN AND DOUG BAKER,

                              Defendants.

_____

        Plaintiff Robert Sutera ("Sutera") is an employee of the Rochester City School District

("RCSD") who failed to receive a promotion to a foreman position.  Sutera brings this action

alleging that the District and the seven named Defendants, who interviewed Sutera and voted

against recommending him for the position, failed to promote him because of his Caucasian race

in violation of Title VII, 42 U.S.C. § 2000e-2, the New York State Human Rights Law

("NYHRL"), N.Y. Exec. Law § 296, 42 U.S.C. § 1981, and the Equal Protection Clause, U.S.

Const. Art. XIV, § 1.  Dkt. #1.  Defendants have moved for summary judgment on all four

causes of action.  Finding no genuine issues of material fact, the Defendant's motion is granted,

and this case is dismissed.

## BACKGROUND

        Sutera, who is a Caucasian male, is a longtime employee of the RCSD Plant Maintenance

Department.  First hired as a painter in 1987, Sutera transferred to the "Maintenance Mechanic I"

position in 1991.  Def. SMF ¶ 1.[1]  He continues to hold the position today.  Pl.'s Compl. ¶ 6.

_____

[1] Throughout this Decision and Order, the Defendant's Statement of Material Facts is referred to as "Def.'s SMF";
Plaintiff's Response to Defendant's Statement of Material Facts is referred to as "Pl.'s Resp. SMF"; Plaintiff's
Complaint is referred to as "Pl.'s Compl."; and Depositions are referred to as "[Name of deponent] Dep."

Throughout his career, Sutera has served as a mechanic in different divisions within the Plant Maintenance Department.  That Department is divided into six divisions, each led by a foreman:    grounds maintenance, plumbing/HVAC, carpentry/locksmithing, painting, preventative maintenance, and electrical.  Def.'s SMF ¶ 5; Griffin Dep. at 12-13.  From 1991 to 1992, Sutera served in the grounds division.  Sutera Dep. at 11, 15.  Sutera then transferred to the "tomato crew," also called the "ketchup crew," a small group of mechanics that finished incomplete jobs among the six divisions.  *Id.* at 16.  Sutera performed carpentry work in the ketchup crew from 1992 to 1995.  *Id.* at 17.  When the ketchup crew was disbanded in 1995, Sutera joined the plumbing division.  *Id.* at 18.  Except for a yearlong transfer to the carpentry division from 1999 to 2000, Sutera has worked in the plumbing division since 1995.  *Id.* at 19-21.

In September 2009, Sutera applied for the "Maintenance Mechanic I (Foreman)" position after viewing a job posting on a bulletin board.  Def.'s SMF ¶ 2.  Although the posting did not indicate that two foreman positions were open or what divisions the foremen would supervise, Sutera knew that the plumbing/HVAC and carpentry/locksmithing positions were available because the foremen of those divisions were retiring.  Sutera Dep. at 23.  Sutera applied for the foreman position by filling out an application and submitting it to the Human Resources Department.  Def.'s SMF ¶ 4.  When Human Resources did not contact Sutera about his application, Sutera approached Joseph Griffin, the Maintenance Inspector who supervised the six foremen at the time.  Sutera Dep. at 25-26.  The day after speaking to Griffin, Sutera received a phone call inviting him to interview for the foreman position.  *Id.* at 27.

On   October   8,   2009,   Sutera   interviewed   for   the   plumbing/HVAC   and carpentry/locksmithing foreman positions before a committee of eight individuals:   the seven named Defendants – Joseph Griffin; Margaret Civiletti, secretary to the foremen; Doug Baker,

2

grounds foreman; John Goodwin, preventative maintenance foreman; Nick Russo, electrical foreman; Robert Crane, outgoing carpentry/locksmithing foreman; Joel Jimenez, outgoing plumbing/HVAC foreman – and an eighth individual not named in this action, glazing foreman Steven Ornt.  Civiletti Dep. at 5; Baker Dep. at 5; Goodwin Dep. at 10; Russo Dep. at 5; Crane Dep. at 12; Sutera Dep. at 89; Ornt Dep. at 6.   Sutera interviewed for the plumbing/HVAC foreman position first, and then the carpentry/locksmithing foreman position.  Def.'s SMF ¶ 7. For the carpentry/locksmithing position, the interview committee asked Sutera a series of questions about carpentry and locksmithing.  Sutera Dep. at 32.  Sutera recognized that his locksmithing knowledge was limited, and admitted that "[t]here were some [questions] in the locksmith area that I was not fully knowledgeable of."  *Id.* at 33.

After answering a series of questions, Sutera showed the committee a portfolio filled with pictures of homes that Sutera privately built outside of his RCSD employment.  *Id.* at 43-44. Some of the pictures displayed work that Sutera personally completed, including "interior flooring, drywall, ceilings, insulation, trim work, painting, ceramic tiles, heating, plumbing, [and] ventilation."  *Id.* at 127.  Other pictures documented work that Sutera did not personally complete but oversaw, such as laying foundation and constructing a home skeleton.  *Id.* at 129. Only Crane asked Sutera a question about the portfolio.  *Id.* at 45.  At the end of the interview, the committee asked Sutera which job he would accept, and Sutera answered that he would accept the carpentry position.  *Id.* at 48.

Once the interview finished, the committee confidentially discussed Sutera's qualifications.  At the outset, Baker questioned whether the committee was wasting its time discussing candidate qualifications when the hiring decision ultimately would be decided based on seniority.  Baker Dep. at 50-51.  In his deposition, Baker explained that on numerous occasions he had attempted to hire employees in his division, and the District's Human

3

Resources Department ignored his recommendations and hired the minimally-qualified candidate with the most seniority. *Id.* In response to Baker's question, Griffin proceeded to reference the language in the labor contract between the District and the Board of Education Non-Teaching Employees ("BENTE") union that governed hiring. *Id.* A related issue arose as to whether the committee could consider Sutera's private carpentry work as "work history...in the City School District" under Article XIV, Section 2(C) of the contract. Griffin Decl. ¶ 8; Ex. J. The seven individual Defendants interpreted the contract as prohibiting Sutera's private carpentry work from being considered as documented experience. Griffin Decl. ¶ 8. Eventually, the committee members narrowed the candidates for the carpentry/locksmithing foreman position to Roddy Johnson, an African-American RCSD employee, and Sutera. Def.'s SMF ¶ 13. Johnson had prior supervisory experience from past employment with the Navy and the East Pattern and Model Corporation, had been a locksmith with the RCSD since 1994, and had participated in numerous related trainings, all of which were detailed on his resume. Dkt. #24, Ex. Q. The committee voted by secret ballot to determine which candidate the committee would recommend. *Id.* ¶ 13. Roddy Johnson received seven votes, and Sutera received one. *Id.* ¶ 15. The seven individual Defendants all voted for Johnson, while Ornt voted for Sutera. Ornt Dep. at 77. The committee members who voted for Johnson did so because they felt he was the better qualified candidate. Civiletti Dep. at 40; Baker Dep. at 49-50; Russo Dep. at 22-25; Crane Dep. at 50-54. Johnson was eventually hired for the carpentry/locksmithing foreman position. Def.'s SMF ¶ 15.

On November 11, 2009, Sutera's union, BENTE, filed a grievance challenging the committee's interpretation of the union contract. Centrone Decl. ¶ 3; Ex. I. While the grievance was in arbitration, Sutera filed a complaint with the New York State Division of Human Rights ("NYDHR") on January 7, 2010, alleging that the District unlawfully discriminated against him.

4

Pl. Cmpt. Attachment 1.  Sutera did not file a separate EEOC charge because of the filing agreement between the NYDHR and EEOC.  Pl. Cmpt. ¶ 2.  On December 3, 2010, NYDHR recommended dismissing Sutera's case so he could pursue his charges in Federal court; an order dismissing his case was entered on January 6, 2011.  *Id.* Attachments 1, 2.  Similarly, on January 19, 2011, the EEOC dismissed Sutera's administrative case so that he could file charges.  *Id.* Attachment 3.

The ongoing grievance was resolved on December 30, 2010, when BENTE and RCSD entered into a Memorandum of Understanding.  Dkt. #24, Ex. K.  BENTE and the District agreed to disagree on the meaning of the contractual language and resolve the ambiguity in the next round of contract negotiations.  *Id.*  Additionally, as part of the resolution of the grievance, the District offered Sutera the plumbing/HVAC foreman position.  *Id.*  Sutera did not accept the position in the required time frame, thereby declining the offer.  Centrone Decl. ¶ 9.  On February 3, 2011, Sutera commenced the instant action, alleging employment discrimination based on race.

DISCUSSION

Sutera alleges four distinct but similar employment discrimination causes of action against the District and the seven individual Defendants: (1) disparate treatment under Title VII; (2) disparate treatment under NYHRL; (3) intentional racial discrimination under 42 U.S.C. § 1981; and (4) intentional racial discrimination under the Equal Protection Clause of the Fourteenth Amendment.  Defendants have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) as well as for summary judgment under Fed. R. Civ. P. 56.  When, as in this case, a movant relies on materials outside the pleadings and the court does not exclude them, a motion for judgment on the pleadings must be converted to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Defendants have presented multiple exhibits and declarations beyond the

pleadings, as is typical in summary judgment motions.  I have considered those materials in ruling on the current motion, and accordingly, Defendants' Motion for Judgment on the Pleadings is moot, and the operative motion is Defendants' Motion for Summary Judgment.

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party can meet this burden by showing that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994).  A court cannot try issues of fact, however, but must rather decide if there are disputed issues that must be tried. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994).  To defeat a motion for summary judgment, a non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The Supreme Court has further instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When considering a motion for summary judgment, all ambiguities and reasonable inferences must be resolved in favor of the non-moving party. *Gallo*, 22 F.3d at 1223.  After considering the evidence in the light most favorable to the non-moving party, if the Court finds that no rational jury could find in favor of that party, summary judgment may be granted. *Id.* Still, caution must be excersized in granting summary judgment in employment discrimination

cases where discriminatory intent is usually well disguised.   *Id.*   "[A]n employer who discriminates is unlikely to leave a 'smoking gun'".   *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

In addressing the claims in this case, I will analyze the Title VII and NYHRL claims in tandem "because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law."   *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 2014 WL 2895974 n.7 (2d Cir. 2014) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).   Then, I will consider the § 1981 and Equal Protection Claims together, as both are brought under the framework of 42 U.S.C. § 1983.

## I. Title VII and NYHRL Claims

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2(a).   Similarly, § 296(1)(a) of the NYHRL makes it unlawful for an employer "to refuse to hire or employ or to bar or to discharge from employment" or "to discriminate against such individual in compensation or in terms, conditions or privileges of employment" because of race.   The burden-shifting analysis used in Title VII and NYHRL cases is well known:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.   Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."   Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) (internal citations omitted).  But before beginning the three-step analysis, I must address the issue of individual liability.

### A.  Individual Liability

Although Title VII and the NYHRL are substantively alike, the causes of action differ with regards to individual liability.  No individual liability exists under Title VII.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").  As a result, the District may be a proper defendant under Title VII, but the Title VII claims against the seven individual defendants must be dismissed.

Individual liability can exist under the NYHRL in two separate sections of § 296.  First, a defendant can be individually liable for discriminatory conduct under § 296(1) if the individual qualifies as an "employer."  To do so, an employee must have "any ownership interest or any power to do more than carry out personnel decisions made by others."  *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 543-44 (1984).  In determining whether an employee has the "power to do more," four factors are relevant: "whether the defendant (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  *Heinemann v. Howe & Rusling*, 260 F. Supp. 2d 592, 595 (W.D.N.Y. 2003) (citing *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)).  A group of individuals on a committee can qualify as an employer, depending on the scope of the group's authority.  *See Heinemann*, 260 F. Supp. 2d at 595.

The second avenue for individual liability under the NYHRL is § 296(6), which states that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce

8

the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). It is settled in this circuit that § 296(6) creates an independent cause of action for employment discrimination claims. *Feingold v. New York*, 366 F.3d 138, 158 n.19 (2d Cir. 2004). Liability under § 296(6) can exist even when an individual does not have the ability to hire or fire. *Id.* (citing *Tomka,* 66 F.3d at 1317).

At the outset, it should be noted that Sutera did not identify a theory of individual liability in his papers. Instead, he alleged individual liability generally against all defendants under New York State Executive Law Article 15, which encompasses the entirety of § 296. As such, I consider both theories. In doing so, I find that the seven individual defendants do not qualify as employers under § 296(1) but could be individually liable under § 296(6). Unlike situations where individual defendants serving on a committee have been considered employers, *see, e.g., Heinemann*, 260 F. Supp. 2d at 595, the interview committee in this case did not have the authority to hire candidates. The committee made recommendations, and Human Resources retained final hiring authority. While the District's Human Resources Department agreed with the interview committee to not hire Sutera for the carpentry/locksmithing foreman position, the Department has overridden committee recommendations in the past. *See* Baker Dep. at 50-51; Russo Dep. at 34-35. Hence, the only theory of liability against the individual defendants under the NYHRL is § 296(6).

**B. Sutera's Prima Facie Case**

Under the *McDonnell Douglas* framework for Title VII claims, a plaintiff must first establish a prima facie case of discrimination. In failure to promote cases, a plaintiff is required to prove that (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination.

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). At the summary judgment stage, the plaintiff's burden of production is *de minimis*. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001).

The Defendants concede that Sutera has established the first three elements of establishing a *prima facie* case. The only contested element is whether Sutera has produced sufficient evidence to permit a *de minimis* inference of discrimination. Sutera presents seven pieces of evidence to support his claim: (1) Cynthia Elliot, a member of the RCSD Board of Education, allegedly asked, "Why are there no black men in charge around here?" while touring the RCSD maintenance facility approximately six months before Sutera's interview; (2) Robert Crane, one of the individual defendants, predicted to Steven Ornt that Roddy Johnson would be hired for the foreman position as the "token nigger" after Crane met with two other members of the interview committee; (3) locksmithing, a field in which Sutera was less qualified than Johnson, was not mentioned in the job description but was emphasized as a job requirement during Sutera's interview; (4) Sutera's job application was initially lost; (5) the interview committee's discussion and interpretation of the union contract resulted in the committee not crediting Sutera's carpentry experience outside the District; (6) all seven individual Defendants voted against recommending Sutera for the position, and the District affirmed that position; and (7) historically there have been few African-American foreman in the plant maintenance department. Sutera does not allege any discriminatory practices concerning the hiring of the plumbing/HVAC foreman position. Def.'s SMF ¶ 7. That the Human Resources Department overrode the interview committee's recommendation of a white worker for the plumbing/HVAC foreman position and hired an African-American worker is therefore excluded from consideration in determining whether Sutera has established a *prima facie* case.

At the outset, questions over the admissibility of Sutera's first two pieces of evidence—Cynthia Elliot and Robert Crane's alleged statements—must be resolved.  Federal Rule of Civil Procedure 56(c) requires that support for factual positions in a motion for summary judgment be in admissible form: "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Schwimmer v. Sony Corp. of Am.,* 637 F.2d 41, 45 n.9 (2d Cir. 1980) ("A hearsay affidavit is a nullity on a motion for summary judgment.").  All of the evidence in the record proving that Elliot made the remark in question is inadmissible hearsay.  None of the deposed witnesses heard Elliot make the statement, and each witness admitted that their knowledge of the remark was based on rumor.  Sutera Dep. at 56; Baker Dep. at 29; Russo Dep. at 39. Consequently, Elliot's alleged statement is inadmissible evidence that cannot be considered.

Even if Elliot's statement could be provided in admissible form at trial, such as Elliot personally testifying, Sutera has established no evidentiary link between the District's hiring practices and Elliot's alleged statement.   Sutera's only link between the two is his own speculation.  *See* Sutera Dep. at 56-57 ("Well, it kind of looks like they were leaning more towards hiring minority staff members.").  "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory ... or based on speculation." *Major League Baseball Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir. 2008).  Therefore, regardless of its admissibility, Elliot's statement cannot serve as evidence of a genuine issue of material fact that could defeat summary judgment.

The second admissibility issue involves Crane's alleged comment to Ornt about Johnson being a "token nigger."  In his deposition, Ornt claims that after Crane met with Griffin and Jimenez, Crane remarked to Ornt: "Teddy Tyndall is going to get the HVM [plumbing/HVAC

foreman position], Roddy Johnson is going to get my job [the carpentry/locksmithing foreman position], and then we'll have our token." Ornt Dep. at 56. After the word "token," "he [Crane] used the N word." *Id.* Crane denies making these remarks. Crane Dep. at 56. No other Defendants are alleged to have heard Crane's statement.

Under Federal Rule of Evidence 801(d)(2), an opposing party's statement is not hearsay when "[t]he statement is offered against an opposing party" and either "(A) was made by the party in an individual or representative capacity;" or "(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." To meet the requirements of Rule 801(d)(2)(D), a party must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992), *cited in Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 129 (2d Cir. 2005). For Sutera's claims against Defendant Crane, Ornt's testimony about Crane's alleged comment is admissible evidence under Fed. R. Evid. 801(d)(2)(A). Likewise, for the claims against the District, Crane's comment is admissible under Fed. R. Evid. 801(d)(2)(D). Crane is an employee of the District; he allegedly made the comment in his capacity as a foreman during work hours on District property; and the comment relates to the hiring of two new foreman. With regards to the other six individual Defendants, however, Crane's comment is inadmissible hearsay.

The admissibility issues properly analyzed, I find that Sutera has met his *de minimis* burden of establishing a *prima facie* case against all eight defendants. Excluding Crane's alleged comment, there is sufficient evidence to permit an inference of discrimination at this stage, where the bar is relatively low. Sutera's lost application, the questions over Sutera's carpentry qualifications despite substantial photograph proof, the historic lack of African-American

12

foreman in the District, Sutera's failure to be promoted, and the promotion of an African-American employee raise the possibility that "these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).  Drawing all inferences in Sutera's favor, Crane's comment further strengthens his *prima facie* case against Crane and the District.

### C. The Defendants' Non-Discriminatory Reason

As Sutera has established a *prima facie* case, the District and individual Defendants must next provide a legitimate, nondiscriminatory reason for failing to promote Sutera.  The District explains that the committee's decision to recommend Johnson over Sutera, which the District then affirmed, was based on three reasons:  Johnson's documented carpentry experience with the RCSD, his significant locksmithing experience, and his prior supervisory experiences in other workplaces. Def.'s Reply Memo at 4.  The District also explains that the interview committee's discussion of the union contract after Sutera's interview was not motivated by discriminatory animus.  Rather, the District maintains that the interview committee referenced the contract because of legitimate questions over whether the committee could consider Sutera's private carpentry experience. *Id.* at 3.

### D. Sutera's Evidence of Pretext

At the third stage of the Title VII analysis, "the *McDonnell Douglas* presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).  A plaintiff is not required to present additional evidence beyond that of the *prima facie* case to meet this ultimate burden. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004).  Rather, to defeat summary judgment, a plaintiff need only show that the employer's proffered reasons

13

"were not the only reasons [for the adverse employment action] and that the prohibited factor was at least one of the motivating factors." *Id.* at 123 (internal quotation marks omitted). Summary judgment is inappropriate "unless the defendants' proffered nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Id.* at 124. As Sutera has not provided additional evidence beyond that of his *prima facie* case, I analyze his *prima facie* evidence in light of the District's explanation and the record before me.

First, there are no genuine issues of material fact in this case. On the surface, Sutera claims to contest six of the Defendants' statements of material fact. Pursuant to Local Rule of Civil Procedure 56(a)(2), the remaining numbered paragraphs that Plaintiff has not contested are deemed admitted. A closer examination of the objections, however, reveals no genuine or material factual disputes.

For example, Sutera objects to the content of ¶ 8 in the Defendant's Statement of Material Facts, which details what occured in Sutera's interview and is entirely based on Sutera's own testimony. Sutera's objection to the statement is not that the hiring process was conducted differently, but rather than Sutera believes that because locksmithing was not specifically mentioned in the job description, it was improper to ask questions about locksmithing at the interview. This is not a factual dispute.

Next, Sutera rebuts ¶¶ 11, 12, 14, and 16 merely by stating that the statements are "self-serving" and disputed by Ornt's testimony. Yet, in his deposition, Ornt does not claim that the interview committee referenced the union contract for discriminatory reasons; that the hiring committee discussed the need to hire a minority foreman; that Griffin attempted to influence the committee's votes for a discriminatory reason; or that the other committee members voted for Johnson because he was African-American. *See* Def.'s SMF ¶¶ 11, 12, 14, 16. Ornt's testimony merely reflects that (1) he had longstanding issues with Griffin, *see* Ornt Dep. at 16, 91-92; and

(2) he believed that Griffin had rigged the hiring process after witnessing Griffin, Crane and Jiminez meet together and listening to Crane's prediction of the hiring process. *See id.* at 69. "Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Ornt's opinions of Griffin's motivations are pure conjecture and unsupported by any additional evidence. This still is the case even when considering Crane's comment about a "token nigger," as the comment appears to be nothing more than Crane's personal opinion. Ornt did not know what Griffin, Jimenez and Crane were discussing together before Crane made his comment later that afternoon, but Ornt speculates that the meeting must have been about the hiring process. Ornt Dep. at 32. Accordingly, Ornt's testimony creates no genuine dispute. In other words, the evidence is not "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The final objection by Sutera is discussed in ¶ 9 of the Defendant's Statement of Material Facts: whether personal homebuilding experience can be considered qualified work experience under the contract language between the District and BENTE. Sutera believes that it should. Pl. Resp. SMF ¶ 9. However, Sutera's personal opinion does not create a genuine issue of material fact concerning his race discrimination claims. The District and BENTE have agreed to disagree on the correct interpretation of the contractual language that Sutera claims was a pretext for discrimination. Just as an employee's subjective opinion of its own performance cannot create a triable issue of fact, *see Ghent v. Moore*, 519 F. Supp. 2d 328, 337 (W.D.N.Y. 2007) aff'd, 324 F. App'x 55 (2d Cir. 2009), Sutera's subjective interpretation of the labor contract cannot defeat the summary judgment motion.

With no genuine issues of material fact, it is clear that Defendants are entitled to summary judgment in their favor. The record supports the District's non-discriminatory reasons for hiring Johnson over Sutera. Johnson had documented carpentry experience with the District from 1990-1994 and locksmithing experience from 1994. Dkt. #24, Ex. Q. Sutera also concedes in his deposition that he had no supervisory experience in the RCSD and little supervisory experience in a formal workplace. Sutera Dep. at 41-42. Johnson, on the other hand, had experience as a supervisor in the Navy and the East Pattern and Model Corporation. Dkt. #24, Ex. Q. Finally, Sutera's allegation that the emphasis on locksmithing was a pretext for discrimination does not withstand scrutiny. While locksmithing was not specifically mentioned in the foreman job description, the skill is a "related trade" to carpentry. Dkt. #24, Ex. O. Although the carpentry/locksmithing foreman may not perform locksmithing work on a day-to-day basis, he or she would have to be ready to assist mechanics at any time with locksmithing repairs. Griffin Dep. at 47-48. And as Crane, the retiring carpentry/locksmithing foreman explained, "locksmithing had changed drastically" and "became a lot more sophisticated" during the course of his career. Crane Dep. at 54. Ultimately, Johnson was more qualified in locksmithing than Sutera – a fact that Sutera does not dispute. Johnson had been a locksmith with the RCSD since 1994 and participated in numerous trainings, which were detailed on his resume. Dkt. #24, Ex. Q. In contrast, at the time of his interview, Sutera conceded his experience was limited. Sutera Dep. at 33 ("Well, when I was in the carpentry department, we worked on door closers and panic bars, but that was basically about it. Nothing to do with keys."). Based on the foregoing, the Plaintiff has failed to rebut Defendants' non-discriminatory reasons, and summary judgment is therefore appropriate regarding the Title VII claim against the District as well as the Title VII and NYHRL claims against the individual Defendants.

**II. Section 1981 and Equal Protection Claims**

The remaining two causes of action that Sutera alleges against the District and the seven individual Defendants allege racial discrimination under § 1981 and the Equal Protection Clause. Both of these causes of action are very similar to Title VII claims: "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). For § 1981 claims, a plaintiff must prove "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The first element is satisfied even if the plaintiff is not a minority; "[s]ection 1981 prohibits racial discrimination in private employment against white persons as well as nonwhites." *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 274 (1976). Like § 1981, equal protection claims require proof of intentional discrimination. *Back,* 365 F.3d at 118.

Section 1981 and Equal Protection employment discrimination claims are brought under the framework of 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights.' It merely provides 'a method for vindicating federal rights elsewhere conferred,' such as those conferred by § 1981." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 attaches additional requirements for plaintiffs to prove. As a government body, the RCSD can only be liable under § 1983 if a District "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978). For individual defendants, § 1983 liability arises

17

when the defendant, "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Sutera's § 1981 and Equal Protection claims against the District and the individual Defendants fail on two fronts, and must therefore be dismissed.   First, Sutera has failed to provide any admissible evidence that the District discriminated against him through an established policy or custom.   The closest potential link to an official policy—Elliot's alleged statement—is inadmissible.   But even if a policy could be proven, the Title VII analysis discussed previously shows that Sutera has not proven facts to support an inference of discrimination by a preponderance of the evidence.

Likewise, the § 1981 and Equal Protection claims against the seven individual Defendants cannot survive summary judgment.   Here, the threshold § 1983 prerequisite has been met, in that all seven individual defendants are public employees who served on the interview committee and, acting in their official capacities, failed to recommend Sutera.   This satisfies the statutory requirement of acting under color of state law.   *See West v. Atkins*, 487 U.S. 42, 50 (1988).   But, as with the previous claims, and for the reasons previously discussed, Sutera cannot prove intentional discrimination.   Accordingly, the Defendants are entitled to summary judgment on the remaining claims against the individual Defendants.

CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment (Dkt. #24) is GRANTED, and this case is dismissed.  The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.


DATED:       August 26, 2014
               Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge

19